

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00364-CV

_____

MELISSA HOLLMANN AND SCOT HOLLMANN, Appellants

V.

VAN SHAW, Appellee

_____

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-267402-13

_____

Before Kerr, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

> Courts presume that the Legislature "understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds." The wisdom or expediency of a law is for the Legislature to determine, not this Court.

*Enron Corp. v. Spring Ind. Sch. Dist.*, 922 S.W.2d 931, 934 (Tex. 1996) (citations omitted).

This is an appeal from a final judgment after a bench trial. This case has been ongoing since 2013 with a long and convoluted history. In short, Appellants Melissa and Scott Hollmann (the Hollmanns) were judgment creditors of Paul Kramer and PK Industries d/b/a Castlegate Homes. To satisfy their judgment against Kramer (underlying judgment), the Hollmanns sought to recover funds owed to him from his former employer, Poly America, LP (PA). Appellee (Shaw) had a competing claim to PA's funds owed to Kramer. PA interpleaded the funds (interpleaded funds) into the registry of the court. The trial court ultimately entered judgment that Shaw recover on his claim for the interpleaded funds. Because the trial court found that the Hollmanns' underlying judgment upon which their claim was based had become dormant, and also because they failed to prosecute their claim for the interpleaded funds with due diligence, the court rendered judgment that the Hollmanns recover nothing on their claim for the interpleaded funds. The trial court also awarded trial and conditional appellate attorney's fees to Shaw from the Hollmanns under Texas Civil Practice and Remedies Code Section 37.009 (TDJA), denied the Hollmanns their request for attorney's fees under the TDJA, and assessed court costs against the Hollmanns. We

2

will affirm the trial court's judgment except that we (1) will modify the judgment to carry 7.5 percent post judgment interest instead of 8.5 percent and (2) will reverse the attorney's fee award to Shaw and remand that issue to the trial court to determine a just and equitable fee when properly segregated.

## A.    Background

Because of the lengthy history of this case, we will set out only those matters pertinent to our disposition of the case. This case was originally filed on August 13, 2013, by Shaw against PA as an application for writ of garnishment claiming that PA owed monies to Kramer under a noncompete agreement and that Kramer owed Shaw money pursuant to a default judgment that Shaw had acquired. Another party, David Bell, intervened on October 24, 2013, claiming an interest in those same funds held by PA,[1] while Shaw nonsuited his application for writ of garnishment on the same day. The Hollmanns intervened in the case on November 11, 2013, claiming to have a judgment dated April 25, 2011, against Kramer in the amount of $695,986.95 plus postjudgment interest at five percent. The Hollmanns claimed that they should recover the funds owed by PA to Kramer in satisfaction of their judgment debt, asked for a writ of garnishment of the funds owed by PA to Kramer, and made liability claims against Kramer and his company, PK Industries, Inc.

---

[1]Bell alleged that Shaw had assigned to him the default judgment that Shaw had acquired.

As of March 7, 2017, PA, having previously deposited $120,000 into the registry of the court, interpleaded an additional sum of $240,000, disclaimed any interest in these funds, and asked the court to determine to whom the funds should be distributed. No writs of garnishment or attachment were ever issued against PA or the interpleaded funds.

Thereafter, Bell and Kramer[2] nonsuited their claims against the interpleaded funds, leaving only the Hollmans seeking distribution of the interpleaded funds. On June 4, 2019, Shaw, who was still in the case as a defendant to claims raised against him by the Hollmanns, counterclaimed against the Hollmanns asserting various causes of action, including a claim for declaratory relief that the interpleaded funds were rightfully his by virtue of an earlier note and assignment from Kramer. He also sought recovery of attorney's fees. Shaw's crossclaim against Kramer for recovery on a debt owed to him by Kramer was also still pending.

With this background established, we will focus directly on the matters related to this appeal—the trial court's granting of summary judgment for Shaw against Kramer on Shaw's debt claim against Kramer, the court's denial of the Hollmanns' claim to the interpleaded funds, the factual sufficiency of the proof of Shaw's attorney's fees due to segregation problems, and the judgment interest rate.

---

[2]Kramer had asserted claims against PA.

### 1. Shaw's Summary Judgment Against Kramer

Shaw's summary judgment motion against Kramer was based on his crossaction filed on June 2, 2014. In that crossclaim, Shaw alleged in bare conclusory fashion that he had loaned Kramer money that had not been repaid as required, constituting a breach of contract resulting in injury to Shaw. He sought recovery of attorney's fees for prosecution and collection of the debt claim. Nowhere in the crossclaim did Shaw assert a claim for declaratory judgment or attorney's fees under the TDJA against anyone.

In his summary judgment motion, Shaw contended that Kramer had judicially admitted in certain of his pleadings the existence of the loan note, the principal amount of $200,000, and the interest rate of 10 percent per annum. Shaw's affidavit established that the loan remained unpaid and that the outstanding indebtedness as of April 1, 2024 was $465,000. Shaw also contended that Kramer admitted that the note assigned the PA noncompete payments (interpleaded funds) owed to Kramer to Shaw for the loan repayment. Shaw contended that the Hollmanns had no standing to contest the note since they were strangers to the transaction.

The Hollmanns filed a response to Shaw's motion for summary judgment. The Hollmanns contended that the motion sought recovery beyond recovery on the note, meaning recovery of the interpleaded funds. They further contended that the note in question was owed by Paul Kramer Construction LLP, not Paul Kramer, individually, whereas the funds in the court registry were owed to Paul Kramer, individually, and the note did not assign those payments in satisfaction of the LLP's note. Finally, without

citing legal authority, the Hollmanns addressed Shaw's objection that they did not have standing to oppose the summary judgment motion. They argued that they had standing because the parties were competing for the interpleaded funds and defeating the summary judgment would benefit their claim to the funds. The Hollmanns also objected to the admissibility of the evidence relied upon in the summary judgment motion. The response did not raise limitations as a defense.

Shaw replied. In addition to providing legal authorities to support his position, he pointed out that Kramer had guaranteed the LLC's loan and that the assignment of the PA noncompete payments was part of the repayment terms of the loan. Shaw also raised the dormancy of the Hollmanns' underlying judgment to argue that they had no enforceable claim to the interpleaded funds.

By order dated February 6, 2025, the trial court granted Shaw's Motion for Summary Judgment Regarding His Claim Against Paul Kramer, ordering judgment for Shaw against Kramer for $465,000, plus postjudgment interest as allowed by law. The order did not specify any reasons for the ruling, did not address attorney's fees, did not rule on any evidentiary objections, and did not address claims for declaratory relief or disposition of the interpleaded funds.

### 2. Trial Court's Denial of Hollmanns' Claim to Interpleaded Funds

At the time of trial, the Hollmanns' live pleadings were (1) Eighth Amended Petition Consisting of Their Request for Distribution to Them of the Funds Currently in The Registry of This Court or Other Equitable Relief as Respects Such Funds, and

6

(2) Answer to Shaw's Second Amended Counterclaim and Request for Declaratory Relief. Shaw's live pleadings at trial were (1) Second Amended Counterclaim and Request for Declaratory Relief and (2) Answer to Plaintiffs' Seventh Amended Petition.

### a. The Hollmanns' Trial Pleadings

In their Eighth Amended Petition, the Hollmanns sought recovery of the interpleaded funds because they were funds that had been owed to Kramer, against whom they had their underlying judgment. They also sought declaratory relief that Shaw was not entitled to the interpleaded funds because, they alleged, Kramer's note to Shaw and the assignment of the Kramer noncompete payments to Shaw were "bogus, and the agreement is void or voidable and of no force and effect." The Hollmanns also alleged that the "necessary prerequisites" to allow Shaw a valid claim to the interpleaded funds had not been satisfied. Finally, they sought recovery of their attorney's fees although no specific statutory basis was stated.

The Hollmanns' Answer to Shaw's Second Amended Counterclaim and Request for Declaratory Relief included a general denial and the following "affirmative defenses": Shaw's alleged promissory note referenced in his Second Amended Counterclaim is invalid, bogus, and of no force and effect as to the interpleaded funds; Shaw's claims are barred by the statute of limitations or laches; Shaw's tortious interference with contract/judgment claim is non-actionable; Kramer's assignment to Shaw was unenforceable, voidable, or void; the Hollmanns' actions taken in court to collect on their underlying judgment were privileged and justified; the Hollmanns'

7

position regarding the interpleaded funds is that of a superior financial interest as to Shaw; estoppel; attorney's fees under the TDJA; and Shaw lacked capacity to challenge the Hollmanns' right to the interpleaded funds under Texas Civil Practice and Remedies Code Sections 34.001 and 31.006.

### b. Shaw's Trial Pleadings

In Shaw's Second Amended Counterclaim and Request for Declaratory Relief, Shaw alleged that he had loaned Kramer monies on various occasions. In particular, Shaw had loaned Kramer Construction Group, LLC the sum of $200,000, which Kramer had fully guaranteed individually. Additionally, Kramer individually executed a promissory note to Shaw for $200,000. Shaw alleged that both notes were due, owing, and unpaid and that the interpleaded funds should be paid to him to satisfy Kramer's debt. Shaw further alleged that the Hollmanns had tortiously interfered with his contract with Kramer and his entitlement to collect the monies owed him from the interpleaded funds, seeking unspecified damages. Shaw also alleged that the Hollmanns were engaged in a "Continuing Tort" by making "frivolous and groundless claims against [him] for purposes of harassment and other improper motives." He additionally sought declaratory relief that: (1) the interpleaded funds rightfully belonged to him; (2) the underlying judgment relied upon by the Hollmanns to support their claim to the interpleaded funds had become legally dormant and unenforceable; (3) Kramer's assignment of the PA payments/monies (interpleaded funds) to Shaw was part of a promissory note and is not subordinate to or subject to any priority of the Hollmanns,

8

or alternatively, the interpleaded funds rightfully belong to Shaw for repayment of the $200,000 loan; (4) the Hollmanns failed to prosecute their lawsuit with diligence, entitling Shaw to dismissal of all claims for want of prosecution; (5) the Hollmanns have no claims against Shaw or anyone else in their Eighth Amended Petition and are not entitled to any remedy asserted in such petition; and (6) such other declarations as are required and equitable related to the foregoing declarative requests. Shaw requested actual, compensatory, and exemplary damages in addition to the interpleaded funds. Finally, he sought recovery of attorney's fees for trial and appeal.

In his Answer to Plaintiffs' Seventh Amended Petition, Shaw pled a general denial. He raised the following "affirmative defenses": (1) the Hollmanns' failure to prosecute their claim with reasonable diligence requires dismissal for want of prosecution; (2) the Hollmanns' claims are barred by Texas Civil Practice and Remedies Code Section 34.001; (3) the Hollmanns' claims are barred by Texas Civil Practice and Remedies Code Section 31.006, as any judgment upon which they claim has been extinguished or waived, is dormant, and was not timely revived; and (4) the Hollmanns' claims are barred by limitations, waiver, estoppel, laches, unclean hands, contributory negligence, release, failure of conditions precedent, and fraud. Shaw also sought relief under Texas Civil Practice and Remedies Code Section 10.001, et seq. for the Hollmanns' litigating for the last ten years for an improper purpose, including to harass or cause unnecessary delay or to needlessly increase the costs of litigation, seeking a take-nothing judgment against the Hollmanns, court costs, and attorney's fees.

### 3. Factual Sufficiency of the Proof of Shaw's Attorney's Fees Due to Segregation Problems

Shaw's lawyer provided the only evidence of his attorneys' fees. While his qualifications were not disputed, the Hollmanns contend that the court's award of attorneys' fees was not just or equitable because, in part, the fees were not segregated between causes of action for which recovery is authorized and those for which such recovery is not authorized.

### 4. Interest Rate

The Final Judgment provided for postjudgment interest at 8.5 percent. The Hollmanns contend that the proper rate should be 7.5 percent.

### 5. Judgment Denying Hollman Claims[3]

#### a. Denial of Claim to Interpleaded Funds

Whether enforcement of a judgment is barred as dormant by Texas Civil Practice and Remedies Code Section 34.001 is a question of law that we review de novo. *Abrams v. Salinas*, 467 S.W.3d 606, 609, 611 (Tex. App.—San Antonio 2015, no pet.). Likewise, whether a party's effort to collect on a judgment constitutes a "writ of execution" under Section 34.001 is a question of law that we review de novo. *Keith M. Jensen, P.C. v. Briggs*,

---

[3]We need not address Hollmanns' issues regarding the trial court's alternative ground of dismissal for want of prosecution because of our affirmance of the trial court's take-nothing judgment based on dormancy of the Hollmanns' underlying judgment. *See* Tex. R. App. P. 47.1.

No. 02-14-00096-CV, 2015 WL 1407357, at *2 (Tex. App.—Fort Worth Mar. 26, 2015, no pet.) (mem. op.).

### b.     Denial of Recovery of Attorney's Fees under TDJA

Under the TDJA a trial court has the discretion to award a nonprevailing party its costs and reasonable and necessary attorney's fees as are equitable and just. *Severs v. Mira Vista Homeowners Ass'n, Inc.*, 559 S.W.3d 684, 712 (Tex. App.—Fort Worth 2018, pet. denied). We review a trial court's ruling under the TDJA regarding attorney's fees for an abuse of discretion. *Id.* Reasonableness and necessity of attorney's fees are questions of fact, whereas the question of whether to award attorney's fees as equitable and just is a question of law. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Comm'rs Ct. of Wise Cnty. v. Mastropiero*, No. 02-22-00383-CV, 2023 WL 3017941, at *4 (Tex. App.—Fort Worth Apr. 20, 2023, no pet.) (mem. op.); *see Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 493–94 (Tex. 2019) (discussing factors to consider in determining reasonableness and necessity of attorney's fees). Whether it is just and equitable to award attorney's fees depends not on direct proof but on the concept of fairness in light of all the circumstances of the case. *Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 162 (Tex. 2004).

In determining whether the evidence is sufficient to support the trial court's exercise of discretion, we consider (1) if the trial court had sufficient information upon which to exercise its discretion, to which we apply the legal and factual sufficiency standards of review, and (2) if the trial court erred in its application of that discretion,

11

i.e., whether, based on the evidence before it, the trial court made a reasonable decision. *Mastropiero*, 2023 WL 3017941, at \*4. It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles. *Bocquet*, 972 S.W.2d at 21. A trial court does not abuse its discretion when its ruling is based on conflicting evidence and some evidence of substantive and probative character supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Mastropiero*, 2023 WL 3017941, at \*4.

### 6. Judgment Granting Recovery of Shaw's Attorney's Fees

Since Shaw's award of attorney's fees was also based on the TDJA, the same standards of review apply to his award, so we will not repeat them. We will, however, address the concept of segregation. Where a claimant seeks recovery on multiple causes of action, some of which allow for recovery of attorney's fees and some of which do not, the claimant has the burden to segregate those fees for which recovery is allowed from those for which no recovery is allowed. *Jackson Walker, LLP v. Kinsel*, 518 S.W.3d 1, 27 (Tex. 2015); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). This duty "is not satisfied by simply suggesting that the causes of action for which fees are and are not recoverable required proof of the same set of facts and circumstances." *Jackson Walker, LLP*, 518 S.W.3d at 27. "[I]ntertwined facts alone do not make unrecoverable fees recoverable." *Id.* "[I]t is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 313–14.

"Contemporaneous billing records are not required to prove that the requested fees are reasonable and necessary. Nevertheless, billing records are *strongly* encouraged to prove the reasonableness and necessity of requested fees when those elements are contested." *Rohrmoos Venture*, 578 S.W.3d at 502 (internal citations omitted). The standard for proving reasonable attorney's fees is by using the lodestar method, calculating the reasonable hours expended and multiplying that number by a reasonable hourly rate. *Id.* at 498. "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* "This base lodestar figure should approximate the reasonable value of legal services provided in prosecuting or defending the prevailing party's claim through the litigation process." *Id.* This presumptive calculation may be adjusted up or down based on certain factors not relevant to this case. *See id.* at 499–501.

"General, conclusory testimony devoid of any real substance will not support a fee award." *Id.* at 501. Generalities about tasks performed provide insufficient information for the factfinder to meaningfully review whether the tasks and hours were reasonable and necessary. *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013); *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012); *Jurgens v. Martin*, 631 S.W.3d 385, 418 (Tex. App.—Eastland 2021, no pet.). Failure to provide evidence of what fees are reasonable and necessary combined with failing to segregate fees or offer evidence

of the "inextricably intertwined" nature of the fees results in failure to segregate requiring reversal. *NP Anderson Cotton Exch., L.P. v. Potter*, 230 S.W.3d 457, 467 (Tex. App.—Fort Worth 2007, no pet.).

## B.     Analysis

### 1.     Summary of Issues and Holdings

The Hollmanns present ten issues on appeal:[4]

a. Does Tex. Civ. Prac. & Rem. Code § 34.001 **No Execution on Dormant Judgment** . . . apply to the Hollmanns' request for distribution of funds from the Registry when such funds were previously deposited there by virtue of actions the Hollmanns took earlier in the trial court to collect on their [underlying] judgment? [Issue 1]

b. Even if [Section] 34.001 [is] applicable, was the Hollmanns' [underlying] judgment "dormant," which prevented the funds in the Registry from being distributed to the Hollmanns, when the Hollmanns' earlier collection actions in the trial court caused funds owed to the judgment-debtor to be deposited in the Registry long before the [underlying] judgment became "dormant"? [Issue 2]

c. Even if [Section] 34.001 applied and the Judgment was "dormant," did the actions of debt filed by the Hollmanns in the trial court revive their [underlying] judgment under Tex. Civ. Prac. & Rem. Code § 31.006 "Revival of Judgment" . . . ? [Issue 3]

d. Did Shaw have standing to claim the Hollmanns' [underlying] judgment was dormant when he was not the judgment-debtor and was his claim to the funds otherwise without merit as a matter of undisputed facts? [Issue 4]

Holdings on Issues 1–4: Overruled.

---

[4]We have altered the formatting and capitalization of the issues.

e. Was the Trial Court's award of $180,000 in attorney's fees to Shaw not equitable or just under the circumstances related to the actions the Hollmanns took in the trial court? [Issue 5]

Holding on Issue 5: Sustained as to the lack of segregation of fees.

f. Was the trial court's dismissal of the Hollmanns' request for distribution of the funds in the registry for want of prosecution under Tex. R. Civ. P. 165a(2) or pursuant to the trial court's inherent power an abuse of discretion? [Issue 6]

g. Was the trial court's implicit denial of the Hollmanns' explicit request that the case be reinstated an abuse of discretion? [Issue 7]

Holding on Issues 6 & 7: We do not reach these issues. *See* Tex. R. App. 47.1.

h. Was the trial court's refusal to modify and correct the Final Judgment error given the meaningful and substantive errors it made in the Final Judgment and the Findings and Conclusions? [Issue 8]

Holding on Issue 8: Overruled.

i. Was the trial court's refusal to make additional and amended findings of fact a meaningful error based on the legitimacy and importance of such findings to an appropriate resolution of the case? [Issue 9]

Holding on Issue 9: Overruled

j. Subject to and without waiving the Hollmanns' argument herein that the trial court erred in awarding a Final Judgment to Shaw, did the trial court err by awarding post-judgment interest at 8.5% in violation of Finance Code [Section] 304.003 which limits such rate to 7.5% and in ignoring the Hollmanns' request to properly calculate the post-judgment rate? [Issue 10]

Holding on Issue 10: Sustained as to the correct rate of interest.

## 2.    Issues 1–4 Discussed

The first preliminary matter to be addressed is Shaw's contention that the

Hollmanns have not appealed from the trial court's summary judgment for Shaw against

Kramer and the subsequent Final Judgment that incorporated that summary judgment and awarded Shaw the interpleaded funds. *See Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 782 (Tex. 2020). While we disagree that the Hollmanns did not attempt to challenge the Final Judgment in this regard, our discussion below reflects that their challenge was waived due to inadequate briefing. As a result, that portion of the Final Judgment will be affirmed.

As another preliminary matter, Shaw argues that there is no evidence of the Hollmanns' underlying judgment in the record. Shaw contends that the Hollmanns' judgment was never admitted into evidence by the court and that the trial court's taking judicial notice of the pleadings was ineffective because the underlying judgment was from another court and was not properly authenticated. *See WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 459 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Elwell v. State*, 872 S.W.2d 797, 799 (Tex. App.—Dallas 1994, no pet.); *Penix v. State*, 748 S.W.2d 629, 630–31 (Tex. App.—Fort Worth 1988, no writ). We disagree that there was no evidence of the Hollmanns' underlying judgment to support the trial court's finding of fact.

First, in its Findings of Fact, the trial court found that "On April 25, 2011, [the Hollmanns] obtained a judgment against [Kramer] in the 352nd Judicial District Court of Tarrant County, Texas. The judgment was in the amount of $863,781.13." This court will defer to unchallenged findings of fact that are supported by some evidence. *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014). Shaw does

not contest this finding's factual correctness, only that it is not supported by the evidence.

Judicial notice is mandatory if a party requests it and supplies the court with the necessary information. *Off. of Pub. Util. Couns. v. Pub. Util. Comm'n*, 878 S.W.2d 598, 600 (Tex. 1994); *Krishnan v. Ramirez*, 42 S.W.3d 205, 222–23 (Tex. App.—Corpus Christi–Edinburg 2001, pet. denied). Courts may take judicial notice of adjudicative facts at any stage of the proceedings and may take judicial notice of other courts' records if given proper proof. *Krishnan*, 42 S.W.3d at 222–23. In *Krishnan*, a wrongful death suit in district court, at the plaintiffs' request the trial court took judicial notice of a probate court order holding that there was no necessity of administration of the decedent's estate and no requirement for the appointment of a personal representative. *Id.* The court of appeals held that judicial notice of that order was proper since the plaintiffs had filed and served certified copies of the motion and order from the probate court and the defense did not object. *Id.*

In this case, the Hollmanns provided the trial court and opposing counsel with a certified copy of the Amended Final Judgment in their underlying case. It is a duplicate of the Amended Final Judgment attached to the Hollmanns' Eighth Amended Petition except it is certified. Although the trial court did not admit the certified copy into evidence, it did take judicial notice of the pleadings on file. Shaw did not object to the tender of the certified copy. We may therefore infer that sometime prior to the rendition of judgment, the court properly took judicial notice of the certified copy of the

17

Amended Final Judgment in view of its Finding of Fact. *See Sunbelt Builders v. Payne Concrete*, No. 07-00-0387-CV, 2000 WL 1635711, at \*4 (Tex. App.—Amarillo Oct. 31, 2000, no pet.); *Est. of Kidd*, 812 S.W.2d 356, 359 (Tex. App.—Amarillo 1991, writ denied). Thus, no further proof of the judgment was necessary. *See Vaccaro v. Raymond James & Assoc., Inc.*, 655 S.W.3d 485, 489 n.2 (Tex. App.—Fort Worth 2022, no pet.).

The final preliminary matter to address is Shaw's contention that the Hollmanns did not appeal the trial court's judgment granting his plea to the jurisdiction, requiring an affirmance of the take-nothing judgment against the Hollmanns. Shaw's plea was based on the dormancy of the Hollmanns' underlying judgment. However, Issues 1 through 4 challenge the trial court's take-nothing judgment based on the dormancy of their judgment. The order granting the Plea to the Jurisdiction was part of the Final Judgment. We will therefore construe Issues 1 through 4 as encompassing the trial court's ruling on the Plea to the Jurisdiction. *See* Tex. R. App. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."); *see also Stephenson v. LeBoeuf*, 16 S.W.3d 829, 843–44 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

We will start our discussion of Issues 1 through 4 with Issue 4. The Hollmanns contend that Shaw has no standing to assert dormancy of their underlying judgment because that defense belongs only to the judgment debtor. The Hollmanns cite no legal authority in support of this contention and offer no legal analysis. It is therefore waived due to inadequate briefing. To assert an issue on appeal, an appellant's brief "must

18

contain a clear and concise argument for the contentions made, with appropriate citations to authorities." Tex. R. App. P. 38.1(i). An appellant waives an issue on appeal if he or she does not adequately brief that issue by providing supporting arguments, substantive analysis, and appropriate citations to authorities and the record. *Carr v. Claudio*, No. 01-22-00815-CV, 2024 WL 3187354, at \*4 (Tex. App.—Houston [1st Dist.] June 27, 2024, no pet.) (mem. op.); *Marin Real Est. Partners, L.P. v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.); *Cervantes-Peterson v. Tex. Dep't of Fam. & Protective Servs.*, 221 S.W.3d 244, 255 (Tex. App.—Houston [1st Dist.] 2006, no pet.).[5]

Even if the standing issue was not waived by inadequate briefing, it would be overruled. A person has standing to sue for an injury when the pleaded facts state a concrete and particularized injury, actual or imminent, not a hypothetical injury. *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 331 (Tex. 2020) (citing *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 155 (Tex. 2012)). When parties are asserting competing claims to an interpleaded fund, one may challenge the other's right to the fund because its underlying claim is barred by limitations. *McBryde v. Curry*, 914 S.W.2d 616, 620 (Tex. App.—Texarkana 1995, writ denied). A

---

[5]The Hollmanns also argue that Shaw was not entitled to the interpleaded funds because his claim was barred by limitations, was behind their claim in priority, and was based on a "bogus and contrived transaction between Shaw and Kramer." These arguments are likewise waived for inadequate briefing because they cite no legal authority and offer no substantive analysis. *See* Tex. R. App. P. 38.1(i).

party seeking to enforce a judgment is subject to the ten-year limitations period of Texas Civil Practice and Remedies Code Section 34.001. Tex. Civ. Prac. & Rem. Code § 34.001; *Abrams v. Salinas*, 467 S.W.3d 606, 611 (Tex. App.—San Antonio, no pet.); *see also Huff v. Huff*, 648 S.W.2d 286, 287 (Tex. 1983) (referring to Section 34.001's predecessor statute as the "ten-year statute of limitation for the renewing and enforcement of judgments"). So, Shaw had standing to raise the dormancy of the Hollmann's underlying judgment to enhance his claim to the interpleaded funds, just as the Hollmanns challenged Shaw's claim against Kramer.

Issue 1 asks whether Section 34.001 applies to the Hollmanns' request for distribution of the interpleaded funds. The answer is "yes." The Hollmanns contend that Section 34.001 is not applicable to their request for distribution because they were not seeking to execute on their underlying judgment; they "simply wanted the funds they caused to be deposited in the Registry to be distributed to them." This simplistic statement misses the mark. In an interpleader action, there are two stages:

> In the first stage, the court determines whether interpleader is appropriate. Generally, the stakeholder is discharged from liability to the rival claimants in the first stage of the process [to] avoid the cost of additional litigation over the stake it once held, but to which it asserts no claim. In the second stage, after interpleader has been determined to be appropriate, the rival claimants litigate their differences.

*Clayton v. Mony Life Ins. Co. of Am.*, 284 S.W.3d 398, 402 (Tex. App.—Beaumont 2009, no pet.). When, as here, multiple parties claim interpleaded funds, each claimant must prove its own claim to the funds and its "relative priority as to all other claimants."

20

*CCPA Enter., Inc. v. Bedford Hosp. Inv., LLC*, No. 02-17-00382-CV, 2019 WL 5608230, at *6 (Tex. App.—Fort Worth Oct. 31, 2019, no pet.) (mem. op.) (quoting *Branch v. Monumental Life Ins.*, 422 S.W.3d 919, 923 (Tex. App.—Houston [14th Dist.] 2014, no pet.)); *McBryde*, 914 S.W.2d at 620. Thus, both the Hollmans and Shaw had a duty to prove their entitlement to the interpleaded funds, and merely asking for distribution was not sufficient.[6]

Shaw raised the dormancy of the Hollmanns' underlying judgment, in essence a limitations plea, as a defense to their entitlement to the interpleaded funds. *See* Tex. Civ. Prac. & Rem. Code § 34.001(a); *McBryde*, 914 S.W.2d at 620.

Section 34.001 provides, in pertinent part,

(a) If a writ of execution is not issued within 10 years after the rendition of a judgment of a court of record or a justice court, the judgment is dormant and execution may not be issued on the judgment unless it is revived.

(b) If a writ of execution is issued within 10 years after rendition of a judgment but a second writ is not issued within 10 years after issuance of the first writ, the judgment becomes dormant. A second writ may be issued at any time within 10 years after issuance of the first writ.

Tex. Civ. Prac. & Rem. Code § 34.001.

---

[6]Although the Hollmanns' and Shaw's initial pleadings were applications for writs of garnishment, no writs were actually issued. PA deposited the funds into the court registry as an interpleader. When an alleged garnishee places funds into the court registry as an interpleader, the rules of garnishment no longer apply. *Daniels v. Pecan Valley Ranch, Inc.*, 831 S.W.2d 372, 383 (Tex. App.—San Antonio 1992, writ denied).

The underlying judgment on which the Hollmanns were relying to create their right to the interpleaded funds was rendered on April 25, 2011. In the absence of the issuance of a "writ of execution" on or before April 25, 2021, their underlying judgment became dormant. So, what is meant by the phrase "writ of execution?"

In holding that a turnover order was not a writ of execution, we stated in *Keith M. Jensen, P.C.*,

> Under the rules, "[a]n execution is a process of the court from which it is issued," Tex. R. Civ. P. 622, through which a judgment creditor can enforce a judgment. Tex. R. Civ. P. 621. A writ of execution is issued by the clerk of the court where the judgment was signed, *see* Tex. R. Civ. P. 622, 627, and must comply with the following requirements:
>
>> The style of the execution shall be "The State of Texas." It shall be directed to any sheriff or any constable within the State of Texas. It shall be signed by the clerk or justice officially, and bear the seal of the court, if issued out of the district or county court, and shall require the officer to execute it according to its terms, and to make the costs which have been adjudged against the defendant in execution and the further costs of executing the writ. It shall describe the judgment, stating the court in which, and the time when, rendered, and the names of the parties in whose favor and against whom the judgment was rendered. A correct copy of the bill of costs taxed against the defendant in execution shall be attached to the writ. It shall require the officer to return it within thirty, sixty, or ninety days, as directed by the plaintiff or his attorney.
>
> Tex. R. Civ. P. 629. Once delivered to any sheriff or constable in Texas, the writ empowers the officer to levy on a debtor's nonexempt real and personal property within the officer's jurisdiction and sell the property. Tex. R. Civ. P. 622, 637, 646a, 649.

22

2015 WL 1407357, at *3; *see also Lavizadeh v. Moghadam*, No. 05-18-00955-CV, 2019 WL 6799756, at *7 (Tex. App.—Dallas Dec. 13, 2019, no pet.) (mem. op.) (holding that a turnover order was not an execution that would trigger a duty to indemnify under a trust agreement).

It is uncontroverted that no "writ of execution," as so defined, was issued on the Hollmanns' underlying judgment. But the Hollmanns contend that their filing of their Petition in Intervention, Application for Writ of Garnishment and Third-Party Petition resulted in PA's acknowledging their garnishment claim and disclaiming any rights in the interpleaded funds. They also point to their Amended Petition, Second Amended Petition, Fourth Amended Petition, Fifth Amended Petition, and Sixth Amended Petition where they continued to pursue their claims against the interpleaded funds. However, PA's Original Answer to the Hollmanns' Application for Writ of Garnishment did not actually acknowledge anything other than the existence of competing applications for writ of garnishment, and it mentioned nothing about writs having been issued and served in accordance with the rules. In fact, the Hollmanns' Petition did not request service on PA and served the Petition only on PA's attorney by email and certified mail. We do not find this argument persuasive.

We held in *Keith M. Jensen, P.C.* that "the *only* method provided under [S]ection 34.001 to prevent a judgment from becoming dormant is the issuance of a writ of execution. *See* Tex. Civ. Prac. & Rem. Code [ ]§ 34.001." 2015 WL 1407357, at *6 (emphasis added).

23

So, is a "writ of garnishment" the equivalent of a "writ of execution" under Section 34.001(a)? It appears that neither we nor our Supreme Court has yet addressed this question.[7] Shaw relies on *Harper v. Spencer & Associates P.C.*, 446 S.W.3d 53, 56–58 (Tex. App.—Houston [1st Dist.] 2014, pet. denied), which held that a writ of garnishment "satisfies the statutory requirement" of a writ of execution under Section 34.001(a). *Id.* at 57. Holding to the contrary, and expressly rejecting the holding in the *Harper* case, is *Smith v. Pallida*, No. 4:18-CV-870-A, 2019 WL 919555, at *3 (N.D. Tex. Feb. 23, 2019). We are not bound by the decisions of either our sister courts of appeals or federal district courts. *In re Reardon*, 514 S.W.3d 919, 923 (Tex. App.—Fort Worth 2017, no pet.) (sister courts of appeal); *Stickland v. Schlegel*, No. 02-22-00281-CV, 2023 WL 8112889, at *14 n.28 (Tex. App.—Fort Worth Nov. 22, 2023, pet. denied) (mem. op.) (federal courts).

With all due deference to our sister court, we believe the reasoning of *Smith* holding that a "writ of garnishment" is not a "writ of execution" under Section 34.001(a) should be applied. According to the *Smith* court,

> As the *Harper* court notes, garnishment is one means of collecting on a judgment. 446 S.W.3d 446 at 56. But that does not mean that a writ of garnishment is a writ of execution. Garnishment and execution are two separate things. And, that other types of judgment collection activities qualify as writs of execution because they meet the definition of Tex. R. Civ. P. 629 (e.g., are directed to any sheriff or constable and are returnable

---

[7]This court held in *Shields v. Stark*, 51 S.W. 540, 540 (Tex. App.—Fort Worth 1899, no writ), that a writ of garnishment was not a writ of execution, but that case predates the modern rules of procedure.

24

in 30, 60, or 90 days) does not mean that a writ of garnishment so qualifies. *See Keith M Jensen, P.C.*, 2015 WL 1407357, at \*3–\*6 (explaining why a turnover order is not a writ of execution); *Raymond K. Oukrop DDS, P.C. v. Tatsch*, 2014 WL 3734192, at \*4 (Tex. App.—Austin 2014, no pet.) (mem. op.) (same). It does not.

A writ of garnishment is not directed to a sheriff or constable; it is directed to the garnishee. Tex. R. Civ. P. 661; *Tenet Health Sys. Hosps. Dall[.], Inc. v. N. Tex. Hosp. Physicians Grp., P.A.*, 438 S.W.3d 190, 197 (Tex. App.—Dallas, no pet.). The sheriff or constable simply delivers the writ of garnishment to the garnishee, Tex. R. Civ. P. 663. Service on the judgment debtor is accomplished as in other civil cases and the action proceeds as any other civil suit. Tex. R. Civ. P. 663a–79. The sheriff or constable does not seize any property in satisfaction of a judgment.

2019 WL 919555, at \*3.

Even if we were to assume that a writ of garnishment satisfies the requirement of writ of execution under Section 34.001(a), the Hollmanns failed to comply with Section 34.001(a) because no writ was ever issued. *See Hawthorne v. Guenther*, 461 S.W.3d 218, 221–22 (Tex. App.—San Antonio 2015, pet. denied) (holding that "issued" under Section 34.001 means more than the mere clerical preparation and attestation of the writ; it must be delivered to an officer for enforcement). As a result, the Hollmanns' judgment would still have become dormant in this scenario even though they filed an application for writ of garnishment. *See id.* at 222.

In Issue 2 the Hollmans argue alternatively that the totality of their efforts constitutes the equivalent of a writ of execution and that to hold otherwise would have required them to do unnecessary and wasteful work when the funds available from PA had been interpleaded into the court's registry. In support of this argument, they cite to

*Harper*, where the court stated that the judgment creditor did not have to go through the exercise of obtaining a writ of execution against the judgment debtor to prevent the original judgment from becoming dormant when he had obtained the issuance of a writ of garnishment. 446 S.W.3d at 58.

The first fallacy to this argument is that after the *Harper* court held that a writ of garnishment satisfied the writ of execution requirement under Section 34.001(a), there was no basis to require anything further as the requirement for a writ of execution (or its equivalent) had been met. As a result, this comment by the *Harper* court was dicta. Second, the present situation is distinguishable from *Harper* because the Hollmanns did not obtain issuance of a writ of garnishment to satisfy the writ of execution requirement.

Finally, the argument about having to perform unnecessary and wasteful work has been rejected by the Supreme Court in the writ of execution setting. In *Delta County Levee Improvement District No. 2 v. Leonard*, 516 S.W.2d 911, 913 (Tex. 1974), Leonard was attempting to collect on judgments on unpaid bonds issued by the District. *Id.* at 912. The question before the court was whether the actual writs of execution, which had been issued in a timely fashion to keep the underlying judgments alive, were effective since the District was not subject to execution as a matter of law, collection only being available by writ of mandamus. *Id.* at 912–13. The court held that the only method for keeping judgments alive under Section 34.001(a)'s predecessor statute was by writ of execution, even though obtaining such writs could not have resulted in actual execution of assets. *Id.* at 913. As we noted at the beginning of this opinion, the legislature is

presumed to understand the needs of its people, and it directs laws to address the needs of its people in the manner it sees best fit. *Enron Corp.*, 922 S.W.2d at 934. "The wisdom or expediency of a law is for the Legislature to determine, not this Court." *Id.* Whether it is wise or fair to require judgment creditors to expend money or effort to keep their judgments alive in ways that may seem wasteful to them is for the legislature to resolve, not the courts.

In Issue 3, the Hollmans contend that if their underlying judgment had become dormant, their application for writ of garnishment and their attendant petitions to collect the interpleaded funds constituted an action to revive the judgment. *See* Tex. Civ. Prac. & Rem. Code § 34.001(a). However, "[a] dormant judgment may be revived by scire facias or by an action of debt brought not later than the second anniversary of the date that the judgment becomes dormant." *Id.* § 31.006; *Hawthorne*, 461 S.W.3d at 222. The actions taken by the Hollmans were neither a scire facias nor an action for debt.

An action for debt "is a new and independent suit that does not seek execution of the former judgment, but instead, seeks recovery of the full amount of the debt owed under the former judgment." *Hawthorne*, 461 S.W.3 at 222; *see also Clarke v. Frost Nat'l Bank*, No. 08-23-00310-CV, 2024 WL 3579325, at *2 (Tex. App.—El Paso July 29, 2024, no pet.) (mem. op.); *Frost Nat'l Bank v. White*, No. 14-18-00437-CV, 2019 WL 1602180, at *1 (Tex. App.—Houston [14th Dist.] Apr. 16, 2019, no pet.) (mem. op.). The Hollmanns urge us to adopt *Hawthorne*'s holding that an intervention

by a judgment creditor in a suit by the judgment debtor in another case coupled with a turnover order in the second case constitutes an "action for debt" that would serve to revive their underlying judgment. We must assume that the intervention relied upon by the *Hawthorne* court met its definition—one seeking recovery of the full amount of the debt owed under the former judgment. The Hollmanns' pleadings do not qualify for "an action for debt" under the *Hawthorne* test; they were merely seeking to collect the interpleaded funds based on the dormant underlying judgment, not a new and independent judgment seeking the full amount owed under the underlying judgment.

The Hollmanns also rely on *In re Brints*, 227 B.R. 94, 97 (Bankr. N.D. Tex. 1998), in arguing that their intervention in the interpleader action was an action for debt. Their reliance is misplaced. *Brints* held that "[a] new suit based on the original judgment brought against the judgment debtors is an action [for] debt." *Id.* There, the suit was one to revive a judgment brought by a successor trustee who owned a judgment against the judgment debtor. In contrast, the Hollmanns' action was against the interpleaded funds and Shaw, not their underlying judgment debtor. They also rely on *Ater v. Knight*, 218 S.W. 648 (Tex. App.—Amarillo 1920, writ ref'd), for the same proposition, but it is distinguishable for the same reason.

Further, the Hollmanns' pleadings do not qualify as a scire facias. "A scire facias proceeding for the revival of a judgment does not constitute a new suit but is merely a continuation of the original suit in which the judgment was rendered." *Carey v. Sheets*, 218 S.W.2d 881, 882 (Tex. App.—Waco 1949, no writ); *see Berly v. Sias*, 255 S.W.2d 505,

508 (Tex. 1953); *Clarke*, 2024 WL 3579325, at *2; *Pharus Funding, LLC v. Solley*, No. 06-20-00090-CV, 2021 WL 1680206, at *1 (Tex. App.—Texarkana Apr. 29, 2021, no pet.). The process for an application for scire facias is,

> First, the judgment creditor must file an application for writ of scire facias. Once a scire facias is issued, the writ must be served on the judgment debtor in accordance with the rules governing writs and process. This requires "the person against whom it is issued to appear and show cause . . . why a dormant judgment against that person should not be revived." After the judgment debtor has answered, or after the time for filing an answer has expired, the judgment creditor may set a hearing on its application to revive the dormant judgment and obtain an order reviving the judgment.

*Clarke*, 2024 WL 3579325, at *2 (internal citations and footnotes omitted); *see also Solley*, 2021 WL 1680206, at *1.

The Hollmanns' pleadings did not meet this test, either. No application for writ of scire facias was filed in the original suit. No writ was issued commanding the debtor (Kramer) to appear and show cause why the underlying judgment against him should not be revived, and no hearing was held on the application to revive the dormant underlying judgment. Failure to comply with these requirements results in no revival of the dormant judgment. *Clarke*, 2024 WL 3579325, at *4.

Finally, regarding the trial court's denial of the Hollmanns' request for attorney's fees, while acknowledging that an unsuccessful claimant under the TDJA may be awarded recovery of reasonable and necessary attorney's fees that are just and equitable under the circumstances, we also note that a trial court's decision on whether to award fees under such circumstances will not be disturbed unless there was an abuse of

29

discretion. *Severs*, 559 S.W.3d at 712. In light of our holdings on Issues 1 through 4, we cannot say that the trial court abused its discretion in not awarding attorney's fees to the Hollmanns, meaning it did not act without reference to any guiding rules and principles. *See id.*

In light of the above and foregoing discussion, we overrule Issues 1–4 and that part of Issue 5 complaining that the trial court awarded no attorney's fees to the Hollmanns.

### 3. Issue 5 Discussed

In the remainder of their fifth issue, the Hollmanns contend that the award to Shaw of $180,000 of attorney's fees was not equitable or just, in part because Shaw did not segregate his fees between matters for which recovery of attorney's fees is allowed and those that do not allow recovery of attorney's fees. *See* Tex. Civ. Prac. & Rem. Code § 37.009. The Hollmanns preserved this issue for review by raising it in their Motion to Modify, Correct, or Reform Final Judgment, Disregard Certain Findings of Fact and Conclusions of Law, and Vacate or Set Aside Order to Distribute Funds, or For New Trial or to Reinstate. *See Ins. Alliance v. Lake Texoma Highport, LLC*, 452 S.W.3d 57, 73 (Tex. App.—Dallas 2014, pet. denied) (holding that failure to segregate attorney's fees challenge is essentially a factual sufficiency challenge preservable by motion for new trial). We will sustain Issue 5 on the failure to segregate challenge.

Shaw's counsel testified about his attorney's fees. He specifically limited his testimony about fees to the period from November 2023 to trial. After proving his

30

qualifications to testify, which are not in dispute, he offered no contemporaneous billing records documenting his work, the time expended, or the specific tasks performed. He testified that he accumulated no less than 250 hours of attorney time that was necessary and that $600 was a reasonable hourly fee for his services.[8]

His description of the work performed was general in nature: preparing for trial, preparing exhibits, researching matters, multiple hearings, preparing mandamus proceedings to compel rulings from the trial court on various motions, and it being a complicated case. He did not testify about specific tasks or segregate his fees between causes of action.

While many pleadings and motions were filed between November 2023 and trial, the following are pertinent to the question of segregation of attorney's fees. On December 15, 2023, Shaw filed his Answer to Plaintiffs' Seventh Amended Petition. In addition to a general denial, he pled these affirmative defenses to the Hollmanns' claims: failure to prosecute their claims with due diligence and their claims were barred by Texas Civil Practice and Remedies Code Sections 34.001 and 31.006, the statute of limitations, waiver, estoppel, laches, unclean hands, contributory negligence, release,

---

[8]In global, conclusory terms he also testified that reasonable fees for an appeal to the court of appeals would be $20,000, plus $20,000 for responding to a petition for review to the Supreme Court, $30,000 more for briefing on the petition for review, plus an additional $7,500 for oral argument and $5,000 for a motion for rehearing. *See Granbury SNF LLC v. Jackson*, No. 02-24-00248-CV, 2025 WL 807497, at *13 (Tex. App.—Fort Worth Mar. 13, 2025, no pet.) (mem. op.) (discussion of cases addressing adequacy of this type of proof for awards of conditional appellate attorney's fees).

31

failure of conditions precedent, and fraud. He also sought sanctions under Texas Civil Practice and Remedies Code Section 10.001 et seq. and asked for attorney's fees in his prayer for relief.

Shaw's First Amended Counterclaim and Request for Declaratory Relief was filed on December 28, 2023. There, he sought declaratory relief that the interpleaded funds were rightfully his and that the Hollmanns' underlying judgment was dormant and would not support a claim against the interpleaded funds. He also pleaded that the Hollmanns were liable to him for damages for tortious interference with contract and an unspecified continuing tort. He further contended that the Hollmanns failed to prosecute their claim with due diligence and that it should be dismissed with prejudice. He sought unspecified damages for actual, compensatory and exemplary damages and attorney's fees. In his Second Amended Counterclaim and Request for Declaratory Relief, filed February 9, 2024, Shaw added a claim against the Hollmanns for tortious interference with judgment in addition to his previously asserted claims. On March 12, 2024, Shaw filed his Motion for Summary Judgment Regarding his Cross-Claim Against Paul Kramer, which was granted by order dated February 6, 2025.

Based on Shaw's pleadings between November 2023 and trial, he alleged causes of action for which attorney's fees are recoverable and for which attorney's fees are not recoverable. Claims that Shaw asserted for which recovery of attorney's fees are allowed include:

* breach of contract on the note allegedly owed to him by Kramer and the assignment of the interpleaded funds to him. *See ½ Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 385–86 (Tex. 2011) (holding that a drawer of a check enters into a contract to unconditionally promise to pay the payee and a suit for breach of that promise falls under Texas Civil Practice Remedies Code Section 38.001 for recovery of attorney's fees);[9]

* claim for declaratory judgment under the TDJA that the interpleaded funds were rightfully his, and also for defending against the Hollmanns' claim that the interpleaded funds were rightfully theirs. *See Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 916 (Tex. 2015); *BP Oil Pipeline Co. v. Plains Pipeline, L.P.*, 472 S.W.3d 296, 319 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

* sanctions under Texas Civil Practice and Remedies Code Section 10.001 et seq.

Claims Shaw asserted for which no recovery of attorney's fees is allowed include:

* tortious interference with contract. *Alma Grp., L.L.C. v. Palmer*, 143 S.W.3d 840, 846 n.5 (Tex. App.—Corpus Christi-Edinburg 2004, pet. denied); *Martin–Simon v. Womack*, 68 S.W.3d 793, 797 (Tex. App.—Houston [14th Dist.] 2001, pet. denied));

* tortious interference with judgment and continuing tort. *See Brosseau v. Ranzau*, 81 S.W.3d 381, 398 (Tex. App.—Beaumont 2002, pet. denied) (holding that generally attorney's fees are not recoverable in tort actions unless provided by statute); *Huddleston v. Pace*, 790 S.W.2d 47, 49 (Tex. App.—San Antonio 1990, writ denied) (same).

---

[9]This attorney's fee claim would have entitled Shaw to a recovery of attorney's fees against Kramer, which would have been included in his claim against the interpleaded funds. On the face of the record, there is no evidence as to these fees being recoverable against the Hollmanns. On remand, it will be Shaw's burden to establish how these discrete legal fees should be assessed against the Hollmanns as part of the TDJA claim or otherwise. *See A & L Eng'g & Consulting, Inc. v. Shiloh Apollo Plaza, Inc.*, 315 S.W.3d 928, 931–32 (Tex. App.—Dallas 2010, no pet.) (failure to segregate fees for quantum meruit claim from TDJA claim required reversal and remand); *see also Ashburn v. Myers*, No. 02-20-00183-CV, 2021 WL 1229969, at *6 (Tex. App.—Fort Worth Apr. 1, 2021, no pet.) (mem. op.).

Because Shaw alleged causes of action for which recovery of attorney's fees were and were not recoverable, he had a duty to segregate those fees that were recoverable from those that were not. *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 310–11*; Ashburn*, 2021 WL 1229969, at *6. He failed to do so. Shaw also failed to detail the work performed, using general descriptions that were global and conclusory, which are factually insufficient to support an award of attorney's fees. *Rohrmoos Venture*, 578 S.W.3d at 496 (holding that generalities about work performed are insufficient to support an attorney's fee award); *City of Laredo v. Montano*, 414 S.W.3d 731, 736–37 (Tex. 2013) ("Gonzalez's testimony that he spent 'a lot of time getting ready for the lawsuit,' conducted 'a lot of legal research,' visited the premises 'many, many, many, many times,' and spent 'countless' hours on motions and depositions is not evidence of a reasonable attorney's fee under lodestar."). In a TDJA claim, where the attorney's fee claimant failed to detail the reasonableness and necessity of the work performed and failed to segregate the work between causes of action for which attorney's fees recovery was authorized from those for which it was not, it was an abuse of discretion to award attorney's fees on the successful TDJA claim. *NP Anderson Cotton Exch., L.P.*, 230 S.W.3d at 468; *see Sustainable Tex. Oyster Res. Mgmt., L.L.C. v. Hannah Reef, Inc.*, 623 S.W.3d 851, 871–74 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). We, therefore, sustain the remainder of Issue 5 and will reverse that portion of the judgment awarding trial and appellate attorney's fees to Shaw and remand that portion of this case

to the trial court for a proper determination of fees. *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 314*; Sustainable Tex. Oyster Res. Mgmt., L.L.C.*, 623 S.W.3d at 874.

### 4. Issues 8–9 Discussed

First, an appellant's brief must state concisely all issues or points presented for review. *Academy of Skills & Knowledge, Inc. v. Charter Schools, USA, Inc.*, 260 S.W.3d 529, 536 (Tex. App.—Tyler 2008, pet. denied). An issue presented in an appellant's brief is sufficient if it directs the attention of the appellate court to the error about which the complaint is made. *Maida v. Fire Ins. Exch.*, 990 S.W.2d 836, 839 (Tex. App.—Fort Worth 1999, no pet.). Issues 8 and 9 fail to do so. Further, although the Hollmanns state these Issues in their Issues on Appeal section of their Corrected Brief, there is no argument or authority addressing these Issues in their brief. An appellate court cannot decide an issue on appeal without proper argument and authority showing why the actions of the trial court were in error. *Stephens & Johnson Operating Co. v. Schroeder*, No. 04-14-00167-CV, 2015 WL 4760029, at *6 (Tex. App.—San Antonio Aug. 12, 2015, pet. denied) (mem. op.). An appellant cannot merely state an issue; he must present argument and supporting authority. *Id.*; *Bechtel Corp. v. City of San Antonio*, No. 04-04-00910-CV, 2006 WL 228689, at *2 (Tex. App.—San Antonio 2006, no pet.); *Wilson & Wilson Tax Servs., Inc. v. Mohammed*, 131 S.W.3d 231, 242 (Tex. App.—Houston [14th Dist.] 2004, no pet.). As a result, Issues 8 and 9 are inadequately briefed and are waived. *See Stephens & Johnson Operating Co.*, 2015 WL 4760029, at *6.

### 5. Issue 10 Discussed

Before addressing the proper postjudgment interest rate, we must first address Shaw's contention that the Hollmanns did not preserve the issue at trial. Preservation of an issue is a prerequisite to presenting a complaint for appellate review. Tex. R. App. P 33.1. A complaint is considered preserved when the record shows that the complaint was made to the trial court by a motion, objection, or request that the trial court ruled on. *Id.*

After the trial court entered its Final Judgment, the Hollmanns filed a Motion to Modify, Correct, or Reform the Final Judgment. In this motion, the Hollmanns moved to correct the postjudgment interest rate to 7.5 percent. Subsequently, the trial court expressly denied the motion in its entirety. Therefore, the Hollmanns satisfied the preservation requirements as established by Texas Rule of Appellate Procedure 33.1. *See Dal-Chrome Co. v. Brenntag Sw., Inc.*, 183 S.W.3d 133, 146 (Tex. App.—Dallas 2006, no pet.).

The Hollmanns contend that the trial court erroneously set the postjudgment interest rate at 8.5 percent. Shaw contends that the trial court posted the correct interest rate. The postjudgment interest rate is the prime rate as published by the Federal Reserve System with a floor of 5 percent and a ceiling of 15 percent. Tex. Fin. Code § 304.003(c). The Consumer Credit Commissioner sends the rate to the Secretary of State, who then publishes the interest rate in the Texas Register. *Id.* § 304.004. Courts, on their own accord, may take judicial notice of the contents of the Texas Register. Tex.

36

R. Evid. 204; *Wagner & Brown v. E.W. Moran Drilling Co., Inc.*, 702 S.W.2d 760, 773 (Tex. App.—Fort Worth 1986, no writ). Further, the courts of appeals may take judicial notice for the first time on appeal. *Off. of Pub. Util. Couns.*, 878 S.W.2d at 600.

On April 25, 2025, the Consumer Credit Commissioner published in the Texas Register the postjudgment interest rate for the month of May 2025. The postjudgment interest rate was set at 7.5 percent. 50 Tex. Reg. 2533, 2635 (2025). The trial court's final judgment did not reflect the proper postjudgment interest rate. Therefore, we modify the trial court's judgment to reflect a post-judgment interest rate of 7.5 percent. *See Morales v. Walker*, No. 04-24-00867-CV, 2026 WL 1179778, at *7 (Tex. App.—San Antonio Apr. 30, 2026, pet. denied) (mem. op.).

## C.     Conclusion

In light of the foregoing holdings, we affirm the judgment of the trial court on all matters except that we modify the postjudgment interest rate to 7.5 percent, reverse that portion of the trial court's judgment awarding trial and conditional appellate attorney's fees to Shaw, and remand only that issue to the trial court for a proper determination in accordance with this opinion. *See Sw. Sunrise, LLC v. John Gannon, Inc.*, No. 14-25-00237-CV, 2026 WL 1144472, at *7 (Tex. App.—Houston [14th Dist.] Apr. 28, 2026, no pet. h.) (mem. op.).

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  August 6, 2026